David J. Harris, Jr. (SBN 286204)
david@harrisllp.com
Gerilyn R. Harris (SBN 286031)
gerilyn@harrisllp.com
HARRIS LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DANIEL KREUTZMANN, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

Defendant.

Case No.: '26CV5836 CAB BJW

CLASS ACTION COMPLAINT FOR VIOLATIONS OF 29 U.S.C. § 1001, *et seq.* ("ERISA")

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 23, Plaintiff Daniel Kreutzmann brings this class action against Defendant Cigna Health and Life Insurance Company ("Cigna") on behalf of himself and all other persons within the United States (the "Class") who have been balance billed for out-of-network ground ambulance services provided to them while they were participants in, or beneficiaries of, an employer-sponsored health plan administered by Cigna, under an Administrative Services Only agreement between Cigna and the employer.

Plaintiff makes the following allegations based upon personal knowledge as to himself and his own acts and experiences, and based upon the investigation of his counsel as to all other matters. Plaintiff and his counsel believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**INTRODUCTION**

1. Millions of Americans earn personal healthcare coverage through their employment, under employee health plans sponsored by their employers. Cigna is a leading, third-party administrator of large companies' employee health plans in the United States.

2. Cigna administers employee health plans under Administrative Services Only ("ASO") agreements with corporate employers. Employers contract with Cigna to structure their health plans and process their employees' healthcare claims. Under the corporate health plans that are the subject of this action, Cigna runs the plans' day-to-day operations (*i.e.,* drafts plan documents, processes healthcare claims, and makes coverage determinations), while each employer pays for its employees' covered healthcare costs.

3. "Self-funded" corporate health plans of this type are governed by the Employees' Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). As a health plan administrator under ERISA, Cigna must act as a fiduciary and

"discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104(a)(1). Cigna must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Id.* In short, Cigna owes statutory, fiduciary duties of loyalty and reasonable care to all U.S. employees who earn healthcare coverage from their employers under the ERISA plans Cigna administers.

4. This case arises from Cigna's violation of its fiduciary duties, in its administration of claims for ground ambulance services provided to ERISA plan participants and beneficiaries.

5. Under the health plans Cigna administers, ground ambulance providers are "out-of-network." This means they have not contractually reduced the bills they send to Cigna for ambulance services provided to plan participants. When a covered employee needs ground ambulance care, the ambulance provider affords that patient all necessary care on the spot. Soon thereafter, the ambulance provider sends Cigna its unnegotiated invoice for services rendered. Ground ambulance providers' fees are generally limited by law, but they remain expensive: often several thousand dollars per ambulance incident, even for minimal, non-emergency services.

6. The plans Cigna administers cover many "out-of-network" health services, including ground ambulance services. This is because requiring covered patients to use only selected, "in-network" ambulance providers would be unsafe and impractical. If someone needs an ambulance, they typically lack the power and discretion to choose which ambulance provider arrives to help them. Accordingly, Cigna's plan documents and ASO agreements with employers provide that Cigna will "negotiate" out-of-network providers' fees, including ground ambulance fees, *after* the fact of care, ostensibly to reduce costs for corporate health plans and their covered employees.

7. Cigna, however, has a conflict of interest in its cost "negotiations" with ground ambulance providers. The conflict of interest arises from Cigna's standard ASO agreements with corporate employers. Under those agreements, Cigna earns contingency fees from plan-sponsoring employers, based on how far down Cigna "negotiates" ambulance providers' fees for services rendered to covered employees.

8. Whatever the difference might be between an ambulance provider's original, unnegotiated fee and the lower, Cigna-negotiated amount an employer ends up paying, Cigna earns up to 29% of that difference from the employer as a "cost containment fee" under its ASO agreements. Cigna, however, knows that ground ambulance providers directly "balance bill" patients for that same difference: for whatever portion of the original, unnegotiated ambulance charges the employer does *not* pay.

9. The net result is that Cigna itself earns more money as an ERISA plan administrator, when covered employees are billed more money for ground ambulance care. Cigna's 29% contingency fees create unnecessary, financial conflicts of interest between Cigna as a plan administrator, and covered employee-participants in the plans Cigna administers: particularly participants who end up needing an ambulance. With respect to such participants, Cigna exploits its conflict of interest and its role as their plan administrator, for its own benefit and to their known detriments.

10. As plan administrator, Cigna has significant influence if not control over the "negotiated" dollar amounts employers' health plans pay to ground ambulance providers on behalf of their covered employees. Cigna uses that control and influence to artificially *suppress* the amounts ERISA plans pay to ground ambulance providers on behalf of patients. By suppressing the dollar amounts plans pay for ambulance care, Cigna directly *increases* the contingency fees it receives from corporate employers. At the same time, Cigna knows its suppression of plan payments increases all the unpaid balances of original, unnegotiated ambulance fees, for which covered

employees become responsible. That creates a conflict of interest of a type that ERISA forbids, between Cigna as a plan administrator, and participants and beneficiaries of the health plans Cigna administers.

11. Due to Cigna's conflicted conduct as a plan fiduciary, Plaintiff and the Class have personally incurred and paid millions of dollars in ground ambulance charges, which they would not otherwise have incurred. By this action, Plaintiff seeks all appropriate statutory relief on behalf of himself and the putative Class.

## PARTIES

12. Plaintiff Daniel Kreutzmann is a natural person residing in San Diego County, California. At all relevant times, he paid for and had personal health coverage through his employer's self-funded ERISA plan administered by Cigna.

13. Defendant Cigna Health and Life Insurance Company is a Delaware corporation with headquarters in Bloomfield, Connecticut. In addition to being a prominent health insurance company, Cigna serves as a third-party administrator of ERISA health plans sponsored and funded by large, corporate employers throughout the United States.

## JURISDICTION AND VENUE

14. This Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C § 1132.

15. Venue is proper in this Court under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant has caused redressable harm to Plaintiff and other Class members within this District.

## SUBSTANTIVE ALLEGATIONS

**Background on "Self-Funded" ERISA Plans**

16. Many corporate employers offer health coverage to their employees as a continuing benefit of employment. Employers offer to pay in full or substantial part for health services their employees receive from providers like physicians, hospitals,

therapists, and ambulance companies. The employees help pay for such coverage through their continuing service to their employers, and typically through periodic, cash deductions from their paychecks. Employer-funded health plans are called "self-funded" plans because the employer, rather than an insurance company, covers its own employees' healthcare costs.

17. Self-funded health plans are governed almost exclusively by ERISA. They function similarly to traditional health insurance policies, except that an uninsured employer, instead of an insurance company, assumes all the risks and obligations of paying for its employees' healthcare needs. Financially speaking, the employer acts much like a health insurer, and treats the employee-participants in its plan like insurance policyholders.

18. Most employers, however, do not specialize in the health insurance business. They have no competence or desire to structure insurance-like health plans, make coverage determinations, process medical claims, or deal with healthcare providers. Accordingly, they outsource the daily operations of their employee health plans to an established insurance company, such as Cigna.

19. Insurance companies like Cigna act as third-party administrators (or "TPAs") of corporate employers' self-funded health plans. TPAs design and operate all the back end, insurance-like functions of the employers' plans. TPAs structure and draft the governing plan documents, deal with covered employees and their healthcare providers, process claims, make coverage determinations, and facilitate employer payments to providers. TPAs create, interpret and apply employers' health plan terms, and tell the employers when, who and how much to pay for their employees' care.

20. ERISA expressly provides for this TPA framework. Under ERISA, self-funded health plans must be "established and maintained pursuant to a written instrument," which identifies "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the

plan." 29 U.S.C. § 1101(a). Insurance companies exercise that authority as TPAs for corporate employers' ERISA plans, under "Administrative Services Only" (or "ASO") agreements with the employers.

**Cigna's ASO Agreements With Corporate Employers**

21. Cigna is a prominent third-party administrator of self-funded ERISA health plans in the United States. For many years, Cigna has executed standardized ASO agreements with numerous corporate employers, including publicly traded, multibillion-dollar corporations operating nationally and internationally.

22. Cigna's ASO Agreements with employers include provisions substantially similar to the following:

> While this Agreement is in effect, CHLIC as the party vested with discretionary claim authority shall, consistent with, the claim administration policies and procedures then applicable to its own health care insurance business (i) receive and review claims for Plan Benefits; (ii) determine the Plan Benefits, if any, payable for such claims; (iii) disburse payments of Plan Benefits to claimants; and (iv) provide in the manner and within the time limits required by Applicable Law, notification to claimants of (a) the coverage determination, including in the case of any adverse benefit determination, the specific reasons for the determination, the Plan provisions on which the determination is based and such other information as required under section 503 of ERISA, or (b) any anticipated delay in making a coverage determination beyond the time required by Applicable Law.

*E.g.*, Ex. C at 5, § 2(a).[1]

[1] Defendant Cigna Health and Life Insurance Company refers to itself as "CHLIC" in its ASO Agreements with employers.

> Employer hereby delegates to CHLIC the authority, responsibility and discretion to determine coverage under the Plan based on the eligibility and enrollment information provided to CHLIC by Employer. Employer also hereby delegates to CHLIC the authority, responsibility and discretion to (i) make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, (ii) conduct a full and fair review of each claim which has been denied as required by ERISA, (iii) decide level one mandatory appeals of "Urgent Care Claims" "Concurrent", "Pre-service" and "Post-service" claims (as those terms are defined under ERISA) and notify the Member or the Member's authorized representative of its decision. Employer will ensure that all summary plan description materials provided to Members reflect this delegation.

*E.g.,* Ex. E at 5, § 2(c).

23. In short, Cigna singlehandedly runs company-sponsored employee health plans as a third-party administrator. This includes managing sizable bank accounts funded by large, corporate employers, to make payments to covered employees' health care providers and to Cigna itself as the plan administrator.

> Employer shall establish as a part of its general assets a Bank Account, and maintain in the Bank Account an amount sufficient at all times to fund payments from it for the following (collectively "**Bank Account Payments**"): (i) Plan Benefits; (ii) those charges and fees identified in the Schedule of Financial Charges as payable through the Bank Account and (iii) any sales or use taxes, or any similar benefit- or Plan-related charge or assessment however denominated, which may be imposed by any governmental authority. Bank Account Payments may include without limitation: (a) fixed per person payments and pay-for-performance payments to Participating Providers; (b) amounts owed to CHLIC; and (c) amounts paid to CHLIC's affiliates and/or subcontractors for, among other things, network access or in- and out-of network health care services/products provided to Members. CHLIC may credit the Bank Account with payments due Employer under a stop loss policy issued by CHLIC or an affiliate.

*E.g.,* Ex. C at 6, § 3(a).

> CHLIC, as agent for the Employer, shall make Bank Account Payments from the Bank Account in the amount CHLIC reasonably determines to be proper under the Plan and/or under this Agreement.

*E.g.,* Ex. G at 5, § 3(b).

24. Cigna also offers employers "Additional Services" related to their plans, as provided in Cigna's standard ASO agreements. *Id.* at 4, § 2.

> In addition to the basic claim administrative duties described above, CHLIC shall also perform the Plan-related administrative duties agreed upon by the Parties and specified in Exhibit B and [redacted] shall provide the services described in Addendum A.

*Id.* at 4, § 2(d). Under Cigna's ASO agreements, "Plan-related administrative duties" include "[d]iscuss[ing] claims, when appropriate, with providers of health services," and the "negotiation" of out-of-network providers' fees for services rendered. *E.g.*, Ex. E at 29, ¶4; *id.* at 22.

25. Out-of-network providers include ground ambulance companies, whose fees become liabilities not only of self-funded ERISA plans, but also of covered employees who end up needing ambulance care.

**<u>"Balance Billing" For Ground Ambulance Services In The United States</u>**

26. The ERISA plans Cigna administers under its ASO agreements cover many services provided by out-of-network healthcare professionals, which Cigna sometimes calls "non-Participating Providers." *Id.* at 3 (defining "Participating Providers" as providers who have affirmatively contracted with Cigna to care for plan participants); *see also id.* at 22 (referencing "covered services received from a non-Participating Provider").

27. Historically, when an out-of-network provider such as a doctor, hospital, or ambulance company cared for a covered patient, the responsible insurance company (whether acting as a TPA or insurer) would pay the provider less than their full fee for services. The healthcare provider would then bill the patient directly, for whatever amount of their full fee the insurance company did not to pay. This practice became known as "balance billing," as providers billed patients directly for the remaining "balance" of their fees that went unpaid by the responsible insurer or ERISA plan.

28. Cigna's ERISA plan booklets, which explain the benefits and limitations of coverage for plan participants, define "surprise billing" as "an unexpected balance bill." *See, e.g.*, Ex. A at 11-12 (Plaintiff's ERISA plan booklet, created by Cigna). Cigna's booklets explain that surprise billing "can happen when you cannot control

who is involved in your care—such as when you have an emergency or when you schedule a visit at an in-network facility but are unexpectedly treated by an out-of-network provider." *Id.* at 12. Cigna further explains that surprise medical bills may cost patients "thousands of dollars depending on the procedure or service." *Id.*

29. In recent years, Congress prohibited surprise billing by most out-of-network healthcare providers, through the federal "No Surprises Act." 29 U.S.C § 1185e(b). The No Surprises Act required out-of-network healthcare providers to negotiate their fees for services directly with ERISA plans and administrators, instead of balance billing patients directly. Additionally, the Act required ERISA plans to charge covered patients only their *in*-network "cost-sharing requirement[s]" for various out-of-network services. *Id*; 29 U.S.C § 1185e(c). Congress thus rendered covered employee-patients largely unaffected by the differences between what their ERISA plans wish to pay, and what their healthcare providers wish to earn, as compensation for their care.

30. Through the No Surprises Act, Congress even enacted a specific prohibition against surprise balance-billing by ambulance companies. 29 U.S.C. § 1185f. That specific prohibition, however, was limited to "*air* ambulance services." *Id.*[2] (emphasis added). Congress intentionally left *ground* ambulance providers federally unregulated in their balance-billing of patients covered by ERISA plans. *Id.* Largely because of this statutory loophole, ground ambulance providers still surprise-bill covered patients for the full, remaining balances of any unnegotiated ambulance charges that patients' health plans decline to pay.

31. For example, if a plan pays a ground ambulance provider $3,000 on behalf of a covered employee, in response to a $3,500 fee submitted by the ambulance provider, the provider directly bills the employee for the remaining $500. If the plan

[2] All emphasis within cited quotations is added unless otherwise indicated herein.

instead pays the ambulance provider only $2,000, then the ambulance provider bills and pursues the covered patient for the remaining $1,500.

**Cigna's Contractual Conflict Of Interest With ERISA Plan Participants**

32. As detailed in ¶¶21-25, *supra*, Cigna manages the operations and finances of health plans funded by large, corporate employers in the United States. Under its ASO agreements with employers, Cigna's managerial work includes "negotiat[ing]" and paying (on behalf of employer-funded plans) out-of-network providers' charges for services rendered to covered employees. *See* Ex. C at 20; Ex. D at 19; Ex. E at 22; Ex. F. at 25; Ex. G at 14. This includes ground ambulance providers' charges. *E.g.,* Ex. A at 34 (referencing "charges for licensed Ambulance service to the nearest Hospital where the needed medical care and treatment can be provided" as a "Covered Expense").

33. Under Cigna's ASO agreements with employers, Cigna has contracted to earn up to 29% of all ground ambulance charges that go *unpaid* by employers' ERISA plans. *See* Ex. C at 20-21; Ex. D at 19-20; Ex. E at 22-23; Ex. F. at 25-26; Ex. G at 14-15. As the plan administrator vested with discretionary authority over claims on plan assets, Cigna effectively controls how much money its administered plans pay for every ground ambulance claim received. Indeed, Cigna decides the precise dollar amounts that administered plans pay to ground ambulance providers, for every covered instance of ambulance care that gets invoiced. The full invoice of ambulance charges comes in to Cigna from the ambulance provider, and Cigna decides how much of that bill to pay on behalf of the responsible health plan. As a result, Cigna effectively decides how much money it makes *for itself* on every ground ambulance claim it processes; the less a health plan pays, the more Cigna earns as a contingency fee from the plan-funding employer: up to 29% of the unpaid balance of ambulance charges. Meanwhile, Cigna knows that ground ambulance providers pursue covered employees for 100% of such unpaid balances.

34. Thus, Cigna knows that whatever amount it decides to earn for itself as a contingency fee, covered employee-patients will be billed *more than three times that amount* by their ambulance providers, as a surprise "balance bill." This creates a clear and undisclosed, financial conflict of interest between Cigna as a plan administrator, and covered employee-participants in the ERISA plans Cigna administers under its ASO agreements: particularly those participants who require ambulance care.

35. ERISA requires Cigna to "discharge [its] duties with respect to a plan *solely* in the interest of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104(a)(1). The 29% contingency fees written into Cigna's ASO agreements with employers fail to satisfy this standard in the context of ground ambulance care. By charging employers contingent, percentage-based fees for minimizing plan payments to ground ambulance providers, Cigna has contractually undertaken to "negotiate" such payments in its own interests, and to the detriments of plan participants, rather than "solely" in participants' interests. *Id.*

36. There is no special need for Cigna to charge employers percentage-based contingency fees, rather than flat fees or hourly rates, for "negotiating" lower plan payments to ground ambulance providers. If Cigna charged employers flat fees or hourly rates for "negotiating" ground ambulance bills, then Cigna could perhaps remain disinterested in the ultimate outcomes of those negotiations. Employers could still save some money, and covered employees might still owe some money for whatever ambulance services they received, but Cigna *itself* would not profit based on how it allocates an ambulance provider's charges between a covered employee and their employer.

37. By charging employers percentage-based, "cost containment fees" for minimizing plan payments to ground ambulance providers, Cigna has unnecessarily and unlawfully placed *its own* skin in the game of pricing ground ambulance coverage for corporate employers throughout the United States. Moreover, Cigna has rigged

that game for its own benefit, by unreasonably underpaying ground ambulance providers to the detriments of covered employees.

38. In Plaintiff's case, Cigna decided that his ERISA plan would pay his ground ambulance provider, American Medical Response, Inc. ("AMR"), just $386.77 of AMR's $3,644.91 fee for ambulance services rendered to Plaintiff. AMR's total ambulance fees were specifically limited by law, yet Cigna had Plaintiff's ERISA plan pay just ~10% of AMR's regulated fees, while knowing that AMR would surprise-bill Plaintiff for the remaining ~90% of its fees, totaling $3,258.14.

39. Cigna then reported to Plaintiff's employer that it had reduced AMR's fees by $3,258.14, through "negotiation." Based on that representation to Plaintiff's employer, Cigna charged his employer 29% of its purported, $3,258.14 cost reduction, under its ASO agreement with his employer. Cigna thus decided and ensured that it would earn nearly $1,000 from Plaintiff's employer—for simply processing his ambulance bill—while AMR would earn only $386.77 from Plaintiff's employer for providing paramedic and ambulance services to Plaintiff on demand. Nearly $1,000 for Cigna's computers to push a few digital papers: yet less than $400 for AMR to bring a specialized vehicle and multiple medical professionals into Plaintiff's immediate service.

40. Such a facially extreme, economic imbalance results from Cigna's conflicted, "cost-containment fees" baked into its ASO agreements with corporate employers. *E.g.,* Ex. C at 20-21; Ex. D at 19-20; Ex. E at 22-23; Ex. F. at 25-26; Ex. G at 14-15. Because of Cigna's conflicts of interest with covered employees, Cigna unreasonably and self-interestedly suppresses ERISA plans' payments for ground ambulance services, and knowingly leaves covered employees like Plaintiff holding the bag. This contravenes ERISA's mandate that plan administrators act reasonably, and act "solely" in the interests of plan participants and beneficiaries. 29 U.S.C. § 1104(a)(1).

**<u>Cigna's Concealment Of Its Conflicted Compensation</u>**

41. Cigna declines to adequately disclose its conflict of interest with plan participants and beneficiaries in its processing of ground ambulance claims. If anything, Cigna's affirmative disclosures to employers and covered patients misleadingly suggest that no conflict exists.

42. *First*, to covered employee-patients, Cigna nowhere discloses that it earns higher contingency fees from having their employers pay smaller portions of their ground ambulance bills. When a covered employee needs an ambulance, and their ambulance provider submits its claim for payment, Cigna sends the employee a standard "Explanation of Benefits" ("EOB") document, detailing whether and how much of their ambulance costs were covered by their health plan. *E.g.,* Ex. B. Cigna's standard EOB documents routinely misrepresent to employee-patients that their ambulance costs have been "100%" paid by their plans: when in fact, at Cigna's direction, their plans paid only a small, minority percentage of their ambulance costs. *Id.* Cigna's EOBs further misrepresent to covered patients that they owe "$0.00" for their ambulance care, when in fact, Cigna knows they will be billed directly by their ambulance providers for thousands of dollars each. *Id.*

43. *Second*, with respect to employers, Cigna's ASO agreements say that Cigna administers "programs to contain costs for health care services/supplies that are covered by the Plan." *See, e.g.,* Ex. C at 20-21; Ex. D at 19-20; Ex. E at 22-23; Ex. F. at 25-26; Ex. G at 14-15. The ASO agreements state that: "[f]or charges for covered services received from a non-Participating Provider (including emergency/urgent care services that are covered at the in-network benefit level), [Cigna] may apply discounts under agreements with third parties *or through negotiation of the billed charges*." *Id.* The ASO agreements assert that "applying these discounts *avoids balance billing and substantially reduces the patient's out-of-pocket costs*." *Id.*

44. The specific "programs" and "discounts" Cigna references here (*id.*) include its "Physician/Professional Bill Review" (or "Bill Review") program. *Id.* The Bill Review program consists of both "Professional Fee Negotiation" and "Line Item Analysis Re-pricing" discounts. *Id.* Contractually, Cigna earns from plan-funding employers up to 29% of any purported, "net savings" resulting from Cigna's provider "Negotiation[s]" and "Re-pricing." *Id.*

45. Nowhere, however, does Cigna adequately disclose to employers that the "discounts" it negotiates or calculates fail to reduce employees' "out-of-pocket costs" when they require ambulance care. *But see id.* (Cigna representing that "applying these discounts avoids balance billing and substantially reduces the patient's out-of-pocket costs"). In truth, Cigna's purported "discounts" *increase* patients' "out-of-pocket costs" dollar-for-dollar with respect to ground ambulance care, as such "discounts" themselves become the balance bills patients receive directly from their ambulance providers. Cigna knows that its purported, ground ambulance "discounts" become "out-of-pocket cost" *increases* for covered ambulance patients, yet still charges patients' employers 29% of those undisclosed cost increases, as "cost containment fees" under Cigna's ASO agreements.

46. Cigna's misstatements and concealments of the true facts surrounding its conflicted compensation allow it to continue charging large, corporate employers up to $1,000 or more per ambulance claim, from among millions of U.S. employees. Cigna has misleadingly profited from administering ERISA health plans in a self-interested manner, and against covered patients' interests, with respect to ground ambulance claims.

**<u>Plaintiff's Experience With Cigna's Unlawful Conduct</u>**

46. Plaintiff Daniel Kreutzmann is a San Diego County resident who went to a local hospital, Sharp Memorial, seeking treatment for insomnia on or about May 1,

2025. The hospital's medical staff evaluated Plaintiff's condition and determined that he would be better treated at a different facility, a half mile down the road.

47. The hospital's staff told Plaintiff that he would need to be transported there by ambulance, per hospital policy. Given the short distance and Plaintiff's non-emergency status, Plaintiff questioned the hospital's policy, but ultimately consented to ambulance transport once the hospital's staff reaffirmed its stated policy.

48. An AMR ambulance soon arrived to transport Plaintiff, per the hospital's instructions. Hospital staff walked him out to the ambulance, where AMR paramedics checked his vitals, asked him some questions, and proceeded to drive him down the road for about two minutes, to the nearby facility where he was ultimately treated.

49. At the time of Plaintiff's ambulance ride, he had ERISA health coverage from his employer, a multibillion-dollar company operating nationally and internationally. Like many large, corporate employers, Plaintiff's employer self-funds its employees' healthcare under an ERISA plan designed and administered by Cigna. Plaintiff pays for his health plan through his continuing service to his employer and through regular, cash deductions from his paycheck. Under an ASO agreement between Cigna and Plaintiff's employer—the terms of which are dictated primarily by Cigna—Cigna serves as the third-party administrator of Plaintiff's health plan.

50. Two weeks after Plaintiff's May 1, 2025 ambulance ride, AMR sent Cigna its invoice for paramedic and ambulance services, totaling $3,644.91. Cigna promptly processed AMR's claim and, upon doing so, sent Plaintiff a standard Explanation of Benefits document, representing that Cigna had "negotiate[d]" AMR's ambulance charges from $3,644.91, down to $386.77. *Id.* at 1. The EOB further stated that Plaintiff's plan had paid AMR $386.77, such that Plaintiff owed "$0.00" and "saved $3,644.91 (100%) off the total amount billed." *Id.* All such representations were materially false and misleading when made to Plaintiff by Cigna.

51. Yet Plaintiff had no reason to disbelieve Cigna's EOB at the time, so he reasonably believed his ambulance costs had been "100%" negotiated and paid by his health plan, as stated in Cigna's EOB. *Id.* It was not until several months later that Plaintiff would first learn otherwise.

52. In or about November 2025, Plaintiff received a $3,258.14 bill from AMR: much more than the "$0.00" Cigna's EOB said he owed, and much more than the "$386.77" Cigna said it "negotiate[d]" with AMR. *Compare* Ex. B at 1, *with* Ex. H. At first, Plaintiff thought AMR's bill might be fake, so he called AMR by phone to verify the bill's authenticity. AMR's phone representative confirmed it.

53. AMR's representative told Plaintiff that the total cost of his ambulance care was $3,644.91, that his "insurance" had paid for $386.77 of it, and that Plaintiff owed the remaining $3,258.14. *Accord* Ex. H at 3. AMR affirmed its $3,258.14 bill to Plaintiff as legitimately owed.

54. Plaintiff expressed to AMR's phone representative his difficulty in paying such a large amount—an amount that Cigna said he had "saved." Ex. B at 1. In response, AMR offered to put Plaintiff on a monthly payment plan to avoid default. Plaintiff reluctantly agreed to AMR's proposed payment plan and began making monthly payments to AMR, fearing damage to his personal credit if he failed to pay. Plaintiff continues to pay AMR's monthly bills to this day. *E.g.,* Ex. H at 3-4.

55. Plaintiff subsequently contacted Cigna while continuing to make monthly payments to AMR. Cigna's phone representative said that, if AMR was dissatisfied with the amount Plaintiff's health plan paid, then AMR should "negotiate" its bill directly with Cigna, before billing Plaintiff for the unpaid, $3,258.14 balance. Cigna's EOB, however, had represented to Plaintiff months prior that such "negotiat[ions]" already occurred. Ex. B at 1.

56. There was no indication from Cigna's representative what contractual or other legal obligations AMR might owe to Cigna, or vice versa. Ultimately, Cigna afforded Plaintiff no help in paying or even communicating with AMR.

57. Consequently, Plaintiff is now paying AMR $3,258.14 for his two-minute, non-emergency ambulance ride, which was (purportedly) "100%" negotiated and paid for by his Cigna-administered health plan.

**<u>Cigna's Unlawful Conflicts of Interest Cause Substantial Harm To The Class</u>**

58. Cigna earned nearly $1,000 as a contingency fee, just for slashing by over $3,000 what Plaintiff's health plan paid for his ambulance care. Yet Cigna never disclosed its contingent earnings to Plaintiff as an ERISA plan participant, to whom Cigna owes fiduciary duties of reasonable care and exclusive loyalty. 29 U.S.C. § 1104(a)(1).

59. At least thousands of other participants in self-funded ERISA plans administered by Cigna have incurred and paid multi-thousand dollar ambulance bills, which received about 10% coverage at Cigna's direction, so that Cigna could profit off the remaining 90% through its undisclosed contingency fees. Cigna has done this on misleading pretenses, and in violation of ERISA's requirement that Cigna administer employee health plans "solely" in the interests of plan participants and beneficiaries. *Id.*

60. Plaintiff and the Class have been harmed not only by their excessive bills for ambulance care, but also by overpaying for private health coverage that Cigna was secretly administering against their interests for its own, undisclosed financial gains.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of himself and all other persons within the United States (the "Class") who have been balance billed for out-of-network ground ambulance services provided to them while they were participants in,

or beneficiaries of, an employer-sponsored health plan administered by Cigna, under an Administrative Services Only agreement between Cigna and the employer. Excluded from the Class are Cigna's and its affiliates' officers and directors, members of their immediate families, and their legal representatives, heirs, successors, and assigns.

62. Members of the Class are so numerous that the joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes there are at least thousands of members of the proposed Class. Class members may be efficiently identified and located from database records maintained by Cigna, and notified of the pendency of this action by electronic mail and/or regular mail using the forms of notice similar to those customarily used in class actions such as this.

63. Plaintiff's claims are typical of other Class members' claims, as all Class members are similarly affected by Cigna's wrongful conduct as complained of herein.

64. Plaintiff will fairly and adequately protect the interests of Class members, and has retained counsel competent and experienced in class action litigation. Plaintiff and his counsel have no interests antagonistic to, or in conflict with, those of the Class.

65. Cigna has demonstrably acted on grounds generally applicable to the Class, such that final injunctive and declaratory relief are appropriate respecting the Class as a whole.

66. Common questions of law and fact exist as to all Class members, and such questions predominate over questions affecting only individual members of the Class. Questions of law and fact that are common and predominate among Plaintiff and other Class members include, without limitation:

a. whether the contingent, "cost containment" fees provided in Cigna's ASO agreements with employers violated Cigna's statutory duties to Class members;

b. whether Cigna used its role and discretion as an administrator of ERISA plans to systematically minimize plan payments to ground ambulance providers;

c. whether, when, and how Cigna knew that participants in the ERISA plans it administers would be balance billed by ground ambulance companies;

d. whether Cigna made materially false and misleading statements to ERISA plan participants and/or their employers, concerning whether plan participants would be balance-billed by ground ambulance providers;

e. whether Cigna concealed from ERISA plan sponsors and participants that it was earning more money for itself, by increasing covered patients' financial exposures to ground ambulance charges, after the fact of care;

f. whether the totality of Cigna's conduct in administering claims for ground ambulance services violated ERISA's mandate that named fiduciaries act "solely" in the interests of plan participants; and

g. whether Plaintiff and the Class have suffered economic harm from Cigna's conduct, and the appropriate remedies, if any, for such harm.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, as the joinder of all members is impracticable. Furthermore, because the harm suffered by individual Class members is relatively small, the expense and burden of individual litigation would make it difficult if not impossible for members of the Class to redress the wrongs done to them on an individual basis. There will be no substantial difficulty in the management of this case as a class action.

## FIRST RIGHT OF ACTION
**Violations of ERISA, 29 U.S.C. § 1104 – Breaches of Fiduciary Duties**

68. Plaintiff hereby incorporates by reference all allegations contained in all other paragraphs of this Complaint, as if fully set forth herein.

69. ERISA imposes upon third-party administrators of employee health plans

fiduciary duties of exclusive loyalty and reasonable care with respect to plan participants and their beneficiaries. Specifically, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan; [and]
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

29 U.S.C. § 1104(a)(1).

70. At all relevant times, Cigna has violated § 1104(a)(1) and, independently, violated each of § 1104(a)(1)'s subsections (A) and (B), in its administration of Plaintiff's and the Class's ground ambulance claims.

71. *First*, Cigna's unnecessary, percentage-based contingency fees in its ASO agreements with Plaintiff's and the Class's employers vested in Cigna a direct and personal, financial interest in the discharge of its duties as an ERISA plan administrator. Such fees rewarded Cigna for using its claim-"negotiating" and "repricing" discretion as an administrator to *minimize* plan payments to out-of-network providers, including but not limited to ground ambulance providers throughout the United States. Cigna's undisclosed, self-created contingency fees, coupled with its systematic use of its administrative discretion to maximize its own contingency fees to the detriments of covered employees, constitute Cigna's failure to "discharge [its] duties with respect to a plan *solely* in the interest of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104(a)(1) (emphasis added).

72. In the same vein, Cigna has "discharge[d] [its] duties" as an administrator for a "purpose" other than "providing benefits to participants and their beneficiaries"

and "defraying reasonable expenses of administering the plan": specifically, for the impermissible "purpose" of maximizing its own contingent, percentage-based fees via its "negotiation" and "repricing" of ground ambulance providers' fees. 29 U.S.C. § 1104(a)(1)(A).

73. *Second*, at all relevant times, Cigna has known that "the circumstances then prevailing" in the United States healthcare industry have included, without limitation, the balance billing of ERISA plan participants by ground ambulance providers. 29 U.S.C. § 1104(a)(1)(B). Cigna's systematic practice of charging plan sponsors (*i.e.,* employers) 29% contingency fees, and using its administrative discretion to minimize plan payments to providers, constitutes an absence of the requisite "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," in the administration of corporate employers' self-funded ERISA health plans. *Id.*

74. Cigna's contingency fees create unnecessary, financial conflicts of interest between Cigna on the one hand, and ERISA plan participants and beneficiaries on the other hand, particularly in contexts where out-of-network providers—such as ground ambulance providers—directly pursue plan participants and beneficiaries for the balances of their fees that go unpaid by participants' health plans.

75. Cigna could easily have contracted with ERISA plan sponsors (*i.e.,* large, corporate employers) to charge flat rates, hourly rates, or any other *disinterested* rate structure for its administrative service in "negotiating" and "repricing" ground ambulance providers' fees for services rendered. Instead, Cigna specifically chose to contract and earn for itself contingency fees, calculated as a percentage of covered employee-patients' exposures to ground ambulance charges, and then, calculated such fees and exposures self-interestedly using its own administrative discretion.

76. At minimum, the totality Cigna's conduct was and is impermissibly self-serving, and independently, lacking in the care, skill, prudence, and diligence required

of a health plan administrator for millions of U.S. employees earning and buying private health coverage from their employers.

77. Due to Cigna's systematic breaches of its fiduciary duties, Plaintiff and the Class have suffered multiple forms of economic harm. Such harms include, without limitation: (a) participating in and overpaying for ERISA health plans administered by an insurance company that has undisclosed, contractual conflicts of interests with Plaintiff's and the Class's interests as plan participants and beneficiaries; and (b) being billed for, paying, and/or facing collections with respect to, thousands of dollars each in ground ambulance charges, which were purportedly "100%" covered by their Cigna-administered health plans.

## SECOND RIGHT OF ACTION

### Violations of ERISA, 29 U.S.C. § 1106 – Prohibited Transactions

78. Plaintiff hereby incorporates by reference all allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

79. ERISA provides that a "fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

80. Cigna, in exercising its delegated, administrative discretion to act on behalf of and/or in the interests of ERISA plan sponsors, participants and beneficiaries, has dealt with ERISA plan assets in its own interests by "negotiating," "repricing," and otherwise controlling the expenditure of plans' monetary assets to minimize plan payments to ground ambulance providers for covered services—so as to maximize Cigna's direct receipts of plan assets from plan bank accounts, in the form of contingent, "cost containment fees" transferred by Cigna from plan bank accounts into Cigna's own bank account(s).

81. As a result of Cigna's prohibited transactions executed for its own, inadequately disclosed financial gain, Plaintiff and the Class have suffered multiple

forms of economic harm. Such harms include, without limitation: (a) participating in and overpaying for ERISA health plans administered by a TPA engaged in undisclosed self-dealing, using their health plans' monetary assets; and (b) being billed for, paying, and/or facing collections with respect to, thousands of dollars in ground ambulance charges (per Class member), which were purportedly "100%" covered by their Cigna-administered health plans. *E.g.,* Ex. B at 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, hereby demands judgment against Cigna as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as a Class Representative, and the law firm of Harris LLP as Class Counsel;

B. For an award of equitable surcharges in the amounts of Plaintiff's and the Class's balance bills incurred for ground ambulance services they received;

C. For an award equitably disgorging to Plaintiff and the Class all of Cigna's undisclosed, "cost containment fees" earned from processing their ground ambulance claims;

D. For an order permanently and publicly enjoining Cigna from charging, or collecting from, any self-funded ERISA plan sponsor any fee that is contingent upon a purported reduction to a ground ambulance provider's fees for covered ambulance services rendered to ERISA plan participants or beneficiaries;

E. Awarding Plaintiff and the Class prejudgment and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and all other costs and expenses of this action; and

F. Awarding any other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 12, 2026

Respectfully submitted,

HARRIS LLP

By: *s/ David J. Harris, Jr.*

David J. Harris, Jr.
Gerilyn R. Harris
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102
david@harrisllp.com
gerilyn@harrisllp.com

*Counsel for Plaintiff and the Putative Class*